IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOSHUA ROY MOSES,<br>*Plaintiff,*<br><br>v.<br><br>JAMIE SORBER et al.,<br>*Defendants.* | CIVIL ACTION<br><br>NO. 22-3385 |
|---|---|

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                                                                                         **July 14, 2023**

This matter involves the alleged medical mistreatment of an inmate with serious medical issues. Plaintiff is *pro* se and a prisoner at SCI-Phoenix, and he alleges staff failed to provide proper care, including delays in providing access to a doctor, failures to adapt to his medical needs, and deviations from the medical recommendations of outside doctors. He alleges that, as a result, Defendants have violated his constitutional rights.

The Motion to Dismiss addresses the following counts with respect to four Defendants listed in the Complaint:

I. **Eighth Amendment Deliberate Indifference to His Medical Care** against Defendants Huner, Sipple, and Sorber

II. **Eighth Amendment Deliberate Indifference to His Medical Care** against the Pennsylvania Department of Corrections ("DoC")

III. **Medical Malpractice** against Defendant Huner

IV. **Negligent Infliction of Emotional Distress** against Defendants Huner, Sipple, and Sorber

I. **SUMMARY OF ALLEGED FACTS**

1

In 2009, prior to his incarceration, Plaintiff lost most of his small intestines due to gunshot wounds. Compl. ¶ 31-35. This condition, short-bowel syndrome, causes a reduced ability to absorb nutrients, frequent diarrhea, and issues with malnutrition. See Short Bowel Syndrome, National Institute of Diabetes and Digestive and Kidney Diseases, https://www.niddk.nih.gov/health-information/digestive-diseases/short-bowel-syndrome (last updated July 2015).

Plaintiff was taken into federal custody on May 13, 2014. Compl. ¶ 39. After stays at other incarceration centers, Plaintiff was eventually transported to SCI-Phoenix on November 22, 2021. Id. ¶ 92. At intake, Plaintiff's gastroesophageal reflux disease ("GERD") medication, abdominal binder, and cane were confiscated. Id. Two days later, Plaintiff submitted a request to Defendant Huner regarding this confiscation, and on December 3, 2021, an employee[1] from Defendant Huner's office responded to the request and Plaintiff allegedly was returned his medication. Id. ¶ 93-94.[2]

Plaintiff attended a sick call with Defendant Dr. Robinson on December 6, 2021 after experiencing chest pains and the breakdown of his bowel, and vomiting blood. Id. ¶ 97. Plaintiff alleges that Defendant Dr. Robinson merely looked at his stomach scars, ordered him Tylenol and an X-Ray, and told him to "keep it simple" when detailing his medical history. Id. Defendant Robinson allegedly stated that he believed Plaintiff had serious chronic issues, but that Plaintiff needed to file a grievance to convince the medical director. Id. Plaintiff filed a grievance in response, to which Defendant Sipple responded by asserting that this sick call never happened. Id. ¶ 105.

---

[1] It is not fully clear that this individual (M. Savage) worked in Defendant Huner's office, but this is the Court's understanding based on the pleadings.
[2] Plaintiff also filed a grievance on this date regarding the confiscation of medication and requesting accommodations for Plaintiff's specialized medical needs.

Plaintiff alleges that he was instructed to go through a body scanner on December 12, 2021, which revealed large amounts of clogged stool.  Id. ¶ 99.  Plaintiff submitted a sick call request the next day but was not seen by medical staff until twelve days later despite this scan and reports of vomiting blood.  Id. ¶ 99-104.  In response to this delay, Plaintiff filed grievances on December 15 and 18, 2021.  Id. ¶ 101.  Defendant Jackson allegedly saw Plaintiff and prescribed Mylanta (a non-prescription antacid) while Defendant Dr. Letizio dismissed any need for additional follow-up.  Id. ¶ 104-05.  In response to Plaintiff's grievance, Defendant Sipple allegedly insisted that Plaintiff's overall goal was to obtain a single cell.  Id.

On January 5, 2022, after an X-ray was conducted on Plaintiff's stomach, Plaintiff was immediately rushed to the emergency room at Einstein Montgomery Hospital on January 5, 2022.  Id. ¶ 106.  The doctors diagnosed Plaintiff with an ileus due to scar tissue (a serious gastroenteric condition), small bowel adhesion, and breakdown of the bowel.  Id.  The physician instructed the officers to send Plaintiff to another hospital for treatment and recommended single cell-housing.  Id.  On January 18, 2022, Plaintiff had a sick call visit with Defendant Dr. Robinson because he had continued to vomit blood, been constantly dehydrated, and had been starving himself to help rest and clear his abdomen.  Id. ¶ 115.  Dr. Robinson said he would submit a request for specialist consultation.  Id. ¶ 115.  Six days later, Plaintiff was told no requests for outside consultations had been submitted and that he had been discontinued from the chronic care clinic.  Id. ¶ 116.[3]

---

[3]     Throughout his stay, Plaintiff filed numerous grievances and appeals of denials of grievances, complaining of the failures to provide reasonable accommodations and medical treatment.  See Compl. ¶ 95, 98, 101, 103, 108, 109, 111, 119, 120, 127, 129, 132, 140, 143, 145, 153, 155, 159, 163, 166, 171, 175, 177.  Their numerosity further supports Plaintiff's argument that Defendants were aware of Plaintiff's complaints.

On January 31, 2022, Plaintiff was taken to the emergency room again after an X-ray revealed a bowel obstruction. Id. ¶ 123. During this visit, Plaintiff alleges multiple tests were performed, polyps were removed, and the doctors recommended a follow-up visit and single-cell housing. Id. ¶ 124. After his return to SCI-Phoenix, Defendant Dr. Letizio allegedly ordered him to be moved to single-cell housing. Id. ¶ 125. Plaintiff requested access to his pathology results from this visit at his February 28, 2022 sick call visit with Defendant Walsh, but he denied this request. Id. ¶ 139. The results were only made available to him on March 22, 2022. Id. ¶ 146. Plaintiff submitted a request to Defendant McCollough regarding the recommended follow-up from this emergency room visit on April 6, 2022 with a separate request to another staff member on April 11, 2022. Id. ¶ 149-51. The response was merely that the plaintiff would be informed when the follow-up was scheduled. Id. ¶ 151.

Plaintiff began requesting a bathroom pass on June 8, 2022 as he had been experiencing difficulty accessing the bathroom outside of scheduled movement despite his medical condition. Id. ¶ 162. The provider Oti-Akenten allegedly informed him that the practice of providing bathroom passes had been discontinued. Id. Plaintiff submitted a grievance and a request to Defendant Huner regarding this issue, and an employee in Defendant Huner's office allegedly responded that they had brought it to Defendant Huner's attention and advised the plaintiff to go to sick call. Id. ¶ 164. In response to the grievance, Plaintiff was informed that medical no longer gives out bathroom passes and that these concerns would need to go through Plaintiff's non-medical Unit Manager. Id. ¶ 171. On July 11, 2022, Plaintiff allegedly raised his concerns to Defendant Sipple in person, to no avail. Id. ¶ 174. As of August 22, 2022, Plaintiff has yet to receive the requested bathroom pass or been granted the follow up recommended by doctors during his previous emergency room visit. Id. ¶ 171, 177.

Defendants at issue in the Motion to Dismiss are Defendant Sorber, Superintendent of SCI-Phoenix, Defendant Sipple, Deputy Superintendent of SCI-Phoenix, Defendant Huner, Corrections Health Care Administrator of SCI-Phoenix, and the Pennsylvania DoC.

## II. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff. Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020). To survive this motion, a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Twombly, 550 U.S. at 555). While a court must assume for purposes of a motion to dismiss that the plaintiff can prove the facts alleged in the complaint, "it is not . . . proper to assume that [she] can prove faces that [she] has not alleged[.]" Twombly, 550 U.S. at 563 n.8 (citing Associated Gen. Contractors of Cal. Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

## III. ANALYSIS

Defendants argue Plaintiff's claims should be dismissed under Rule 12(b)(1), (6) for the following reasons:

1. The Pennsylvania DoC is entitled to 11th Amendment immunity.
2. The Pennsylvania DoC is not a person subject to suit under § 1983.
3. The complaint fails to allege facts supporting Defendants Huner, Sipple, and Sorber's personal involvement in the alleged constitutional violations.
4. Denying a grievance alone does not violate any constitutional right.
5. Plaintiff fails to state an 8th Amendment claim against individual Defendants as they did not act with deliberate indifference to a serious medical need.
6. The court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims as the court has dismissed all claims over which it has original jurisdiction.

A.     **The PA DoC is Entitled to Eleventh Amendment Immunity from § 1983 Claims**

The DoC is immune from suit, including those brought under § 1983, under the 11th Amendment as a state's immunity extends to its agencies and departments. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984). This immunity is well-established and ironclad.

However, there is an exception that states may be sued because of violations of the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12202; U.S. v. Georgia, 546 U.S. 151, 154 (2006) ("We have accepted [§ 12202] as an unequivocal expression of Congress's intent to abrogate state sovereign immunity."). While no specific ADA claims were present in the original complaint, Plaintiff did describe himself as qualifying for ADA protection under 42 U.S.C. § 12102(2). Compl. at ¶ 119. More specific allegations are required for these claims, and therefore the Court will grant the motion to dismiss with respect to Count II with leave to plead an ADA claim within 30 days. [4]

B.     **The Complaint Alleges Facts Sufficient to Support Individual Defendants' Personal Involvement**

Defendants may not be held liable solely due to supervisory authority; alleged or actual personal involvement in the alleged wrongs is required. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("liability cannot be predicated solely on the operation of respondeat superior"); Chincello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986) (holding personal liability

---

[4] Further, § 1983 suits must be brought against a "person" which excludes states and individuals acting in their official capacities. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Plaintiff claims to merely be suing the individual Defendants in their individual capacities rather than their official capacities. Resp. ¶ 23. But "[t]he Pennsylvania Department of Corrections is undoubtedly a state instrumentality . . . ." Downey v. Pa. Dep't of Corr., 968 F.3d 299, 310 (3d Cir. 2020). While Eleventh Amendment immunity is sufficient to dismiss Count II, this argument would provide an alternative adequate basis to dismiss the § 1983 claims against the Pennsylvania DoC.

requires personal direction or actual knowledge and acquiescence in the deprivation). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Rode, 845 F.2d at 1207. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Id. Further, Plaintiff's use of the grievance process is not enough on its own to establish that the Defendant administrators had actual knowledge of the alleged constitutional violations. Id. at 1208.

However, Plaintiff's allegations are not limited to Plaintiff's filing of grievances. A defendant's active role in reviewing and responding to the grievances can result in a finding of actual knowledge of the hardship, even if it is insufficient on its own to establish deliberate indifference for non-medical staff. See Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003) (holding that a defendant's review of and response to a grievance appeal demonstrated active role in the process and personal involvement); Parkell v. Danberg, 833 F.3d 313, 336 n. 14 (3d Cir. 2016) (noting that filing of grievance can show actual knowledge if accompanied by evidence that the defendant reviewed the grievance); see also Atkinson v. Taylor 316 F.3d 257, 271 (3d Cir. 2003) (holding that supervisors with a narrower scope of responsibilities may be found to have actual knowledge of individual complaints because their narrower roles "logically demand more particularized scrutiny of individual complaints").

Plaintiff alleges that each of Defendants Huner, Sipple, and Sorber was actually made aware of the alleged deficiencies in medical practices and acquiesced to these practices. Plaintiff alleges that he made direct requests to Defendant Huner regarding his specialized medical needs which were not responded to until after his second rushed visit to the emergency room. Compl. ¶ 11-12; see also id. ¶ 164 (requesting accommodations for his medical needs from Defendant Huner again). Plaintiff also alleges that Defendant Sipple denied grievances that he submitted

7

and that he spoke to face to face on July 11, 2022. Compl. ¶ 174. Finally, Plaintiff alleges that Defendant Sorber denied at least some of his grievances directly. Compl. ¶ 18. These allegations suggest that these individual Defendants had actual notice of Plaintiff's allegations of medical deficiencies.

Not only were the named individual Defendants allegedly aware of the alleged medical decisions and practices, they were also aware that Plaintiff's medical condition may have necessitated accommodations such a bathroom pass, dietary modifications, and single cell housing and were actually aware (in some cases, actively involved in denying them).[5] Plaintiff alleges Defendant Sipple denied his grievances on the subject and stated Plaintiff was merely trying to acquire a single cell with no true medical need. Plaintiff has alleged that both Defendant Huner and Defendant Sipple had authority over medical disability accommodations such as the bathroom pass policy and single cell housing requirements. He asked them both for help in acquiring the necessary accommodations for his condition and both – along with Defendant Sorber – were present on the Inmate Disability Accommodation Committee ("IDAC").[6]

Because the accommodation requests were denied, Plaintiff alleges that inadequate bathroom access resulted in him soiling himself unnecessarily. Compl. ¶ 15. Allegations that these Defendants were informed of Plaintiff's medical circumstances and failed, despite repeated requests, to accommodate him to prevent this type of indignity state a valid cause of action under

---

[5] As detailed in Section II, supra, the single cell housing issue was allegedly remedied after the second visit to the emergency room.

[6] See Resp. ¶ 29. The Committee's role is not described beyond having authority over authorizing single-cell housing requests, although the name of the committee suggests a wider role in accommodating prisoners with special needs.

the Eighth Amendment.[7] These specific allegations that the individual Defendants were aware of these circumstances and denials – and in some cases actively involved in denying them – are sufficient to find personal involvement for all three Defendants in the failures to provide adequate accommodations.

### C. The Complaint Alleges Facts Sufficient to Support Individual Defendants' Deliberate Indifference

Deliberate indifference to an inmate's serious medical condition is a violation of the Eighth Amendment and states a cause of action under § 1983. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). One way of showing deliberate indifference is by establishing a defendant's subjective recklessness, including the defendant's consciousness of the risk. Farmer v. Brennan, 511 U.S. 825, 840 (1994). Deliberate indifference can be found when prison authorities deny reasonable requests for medical treatment causing undue suffering, or when knowledge of the need for medical care is accompanied by a deliberate failure to provide that care. Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). Denying inmates access to medical staff for the purposes of either diagnosis or recommended treatment constitutes deliberate indifference. See West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978). Mere disagreements between the inmate and medical staff regarding medical treatment, however, are insufficient when the

---

[7] The Court need not consider whether each of these deprivations, individually, could constitute an Eighth Amendment violation. It suffices to say that inadequate bathroom access for an individual suffering from a condition which results in frequent gastroenteric issues, such as diarrhea, would constitute a violation of "the basic concepts of humanity and decency that are at the core of the protections afforded by the Eighth Amendment." Thomas v. Tice, 948 F.3d 133, 146 (3d Cir. 2020) (Greenaway, J., concurring in part, dissenting in part); see also Young v. Quinlan, 960 F.2d 351, 365 (3d Cir. 1992) (holding that denial of basic sanitation can constitute cruel and unusual punishment in violation of the Eighth Amendment); Clark v. Coupe, 55 F.4th 167, 183 (3d Cir. 2022) (observing that conditions of confinement that are "foul, inhuman or totally without penological justification" violate the constitution) (internal quotation marks and citation omitted).

claims only concern the denial of the inmate's specific requests. See Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987).

The alleged denial of the request from both the outside doctors and Plaintiff to schedule a follow-up visit, to provide Plaintiff with his pathology results, and for additional sick call visits could constitute deliberate indifference, especially given the severity of the symptoms and how longstanding and well-established Plaintiff's medical issues were. Because of these denials, Plaintiff was prevented from accessing medical care recommended by his emergency room doctors and left unaware as to any urgent medical needs that may be indicated in his pathology results. While the defendant responsible for this lapse in care is not named, the recommendation from outside doctors should have squarely put Defendants on notice that additional medical care was required. Defendant Huner was allegedly made aware of the delay in receiving care after Plaintiff's full body scan revealed large amounts of clogged stool.[8] Yet, no remedial action was taken to provide Plaintiff timely care as he was turned away from sick call two different times before finally being seen by Defendant Jackson twelve days after the initial scan. The alleged pattern of repeated failure to provide adequate medical examinations or accommodations despite the known severity of Plaintiff's condition, if true, could constitute a violation of Plaintiff's Eighth Amendment rights.

Defendants contend that under Spruill v. Gillis, non-medical prison officials cannot be held responsible for medical treatment plans or decisions that Plaintiff believes are inadequate. "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable

---

[8] Defendants insist that Plaintiff's requests to Defendant Huner may only have been reviewed by a subordinate. As the request was allegedly directed to Huner himself and the alleged response explicitly stated that Huner was made aware of the situation on at least one occasion, the allegations are sufficient to survive at the motion to dismiss stage. See Compl. ¶ 164.

with the Eighth Amendment scienter requirement of deliberate indifference." 372 F.3d, 218, 236 (3d Cir. 2004).  But in grievances that Defendants read <u>and responded to</u> on multiple occasions, Plaintiff asserted that prison doctors were not adequately treating him.  Plaintiff's allegations are not limited to quality of care, but whether Plaintiff would be seen by medical professionals at all.  As discussed above, Plaintiff offers specific allegations that Defendants had actual knowledge of these alleged deficiencies in medical treatment.  <u>See supra</u> Section IV.B.  Further, the allegations related to bathroom access are matters of prison administration, not medical treatment.  As alleged, the inadequate medical treatment and inadequate bathroom accommodations for his specialized medical needs could potentially sustain an Eighth Amendment claim.  <u>Spruill</u> is inapplicable to the latter.

If the allegations are true, a jury could infer that Defendants were deliberately indifferent, as the recommendations of outside doctors, grievances reviewed, and direct requests from Plaintiff placed prison administrators on notice as to Plaintiff's need for medical accommodations.  Plaintiff alleges insufficient action was taken to address these needs, causing him to suffer constitutionally impermissible harms, risks, and indignities. These are sufficient allegations against individual Defendants to survive a motion to dismiss.

## IV.   CONCLUSION

For the foregoing reasons, the Court will deny the motion to dismiss Count I with respect to Defendants Sorber, Sipple, and Huner.  Count II is barred by the Eleventh Amendment and cannot proceed in its current form.  Thus, the Court will dismiss this Count without prejudice and with leave to amend.  Finally, while Defendants contend that Counts III and IV should be dismissed for lack of supplemental jurisdiction, Count I, a federal claim, survives this motion and so the

Court retains supplemental jurisdiction. Thus, the Court will also deny the motion with respect to Counts III and IV.

An appropriate order follows.