**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSHUA ROY MOSES**<br>*Plaintiff*,<br><br>                              **v.**<br><br>**JAMIE SORBER, *et al.*,**<br>*Defendants*. | **CIVIL ACTION NO. 22-3385** |

**MEMORANDUM RE: MOTION TO COMPEL DISCOVERY**

BAYLSON, J.                                                          NOVEMBER 17, 2025

## I.      INTRODUCTION

Before the Court is a Motion to Compel Discovery ("Mot.," ECF 133) filed by Plaintiff

Joshua Roy Moses ("Plaintiff"). Plaintiff seeks records of medical grievances filed by other

inmates and submitted to the Pennsylvania Department of Corrections' Bureau of Health Care

Services. Mot. at 3. Defendant Pennsylvania Department of Corrections ("DOC" or

"Defendant") has opposed the Motion ("Opp'n," ECF 138). For the following reasons, the

Motion is **GRANTED** in part and **DENIED** in part.

## II.     FACTS AND PROCEDURAL HISTORY

Plaintiff alleges claims pursuant to 42 U.S.C. § 1983, Title II of the Americans with

Disabilities Act, Section 504 of the Rehabilitation Act, and Pennsylvania law. See Second Am.

Compl., ("SAC," ECF 81). Among the claims in the SAC are *Monell* and corporate negligence

claims against Defendant Wellpath LLC, the company with which the DOC contracts to provide

medical care, and Eighth Amendment supervisory liability claims against Defendant Smith, the

director of the DOC's Bureau of Health Care Services ("BHCS"), as well as Defendant Long, the

DOC's Chief of Clinical Services.  Id. ¶¶ 414–15 (Count II), 440–44 (Count VIII); see also id. ¶¶ 12–14.

Plaintiff alleges he sustained multiple gunshot wounds in 2009, which caused him to have portions of his small and large intestines removed.  SAC ¶ 1.  He developed short-bowel syndrome, a chronic condition that causes frequent and sudden diarrhea, severe abdominal pain, nausea, and other gastrointestinal symptoms.  Id.  When he was incarcerated, Plaintiff relied on prison staff and medical professionals to treat his symptoms, ensure he had ready access to a toilet, and provide him with a medically appropriate diet.  Id. ¶ 2.  Plaintiff alleges the DOC, Wellpath, and the individual employee defendants failed to provide him with timely access to specialists, failed to adequately treat his symptoms, failed to provide him with a medically appropriate diet, and forced him to soil himself repeatedly because he lacked prompt access to a toilet.  Id. ¶ 4.  He seeks injunctive relief and damages for violations of his rights under the First and Eighth Amendments to the U.S. Constitution, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Pennsylvania law.  Id. ¶ 5.

Plaintiff has deposed all ten individual defendants and responded to all discovery requests from Defendants.  Mot. at 2-3.  Plaintiff served the disputed document request, Request No. 14, on March 18, 2025, seeking as follows:

> Produce the complete SOIGA[1] file for every grievance appeal referred by SOIGA to BHCS[2] from September 1, 2021, through December 31, 2024. "Complete SOIGA file" includes, but is not necessarily limited to, the initial grievance, all appeals, all responses, and the document titled 'BHCS Review of Final Grievance Appeal.

Defendants objected as follows:

---

[1] SOIGA is the Secretary's Office of Inmate Grievance Appeals, the DOC office that processes and responds to final appeals of inmate grievances.
[2] BHCS is Bureau of Health Care Services.

> OBJECTION: This request impermissibly seeks the production of documentation of all grievances or complaints filed by inmates or staff pertaining to any of the named defendants and thus constitutes "precisely the kinds of sweeping, generalized and overly broad requests" that are regularly rejected as, not only overly broad, but also unduly infringing upon the privacy interests of other inmates who may have sought to grieve unrelated issues that they had with staff. [citations]. Without waiver, SOIGA does not track pull information specific to BHCS referrals.

The parties conferred extensively to resolve the matter without the Court's involvement.  Mot. at 3.  Plaintiff, through appointed counsel, clarified that Request No. 14 was *not* seeking all grievances filed about the named defendants and noted that names and inmate numbers of non-party incarcerated individuals could be redacted to address the stated privacy concerns.  See Mot. at 4, Ex. A at 2–3.  During her July 1, 2025 deposition, Defendant Smith stated that she did have the ability to determine how many grievances were referred to BHCS during a given time period and to generate a list of those grievances.  Id. See also Ex. B: Smith Dep. 75:15–76:2.

On July 2, 2025, Defendants provided a list of seven categories into which SOIGA classifies grievances that typically get referred to BHCS.  Mot. Ex. C at 6–7.  Defense counsel reiterated that SOIGA had no way of filtering which grievances were referred to BHCS.  Id. at 7.  On July 10, 2025, Plaintiff agreed to narrow Request No. 14 to only seek grievances assigned to three of the seven categories: "health care," "medical co-pay," and "problem with staff – medical."  Id. at 6.  On July 25, 2025, Defendants' counsel informed Plaintiff's counsel that, in the specified time period, SOIGA received around five thousand (5,000) grievances within the three categories.  Mot. at 5.  This number was not narrowed to only those that reached final appeal and were referred to BHCS.  Id.  Defendants told Plaintiff that "[t]o the extent these individual files are relevant, it's outweighed by burden and privacy concerns," noting that the process of cross referencing all the requests would be too great a burden.  Id.  Plaintiff offered to (i) narrow the time period of requested documents to May 1, 2023–Dec. 31, 2024 (cutting the

time period from 40 months to 20 months); (ii) perform the cross-referencing of the SOIGA and BHCS lists themselves to identify the files to be produced; and (iii) sign a confidentiality agreement regarding the grievance documents.  Id.  Plaintiffs also indicated a willingness to further narrow the temporal scope of the request.  Id. at 6.  Defendants offered to provide a declaration stating the number of applicable grievances and list of the outcomes, but declined to produce the actual documents.  Id.  Plaintiff declined this proposal, but offered to reduce the time period to twelve months and limit the documents requested to just two pages from each responsive grievance file so only two pages would require redaction.  Id.  The parties could not reach an agreement, so Plaintiff filed the instant motion.

### III.    LEGAL STANDARD

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "Relevance is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Green v. Cosby, 314 F.R.D. 164, 171 (E.D. Pa. Mar. 21, 2016) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

The party moving to compel "bears the initial burden of showing the relevance of the requested information."  Morrison v. Phila. Hous. Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). The "burden then shifts to the party resisting discovery to justify withholding it," id., by showing "that the material requested does not fall within the broad scope of relevance defined by Rule 26

or is of such little relevance that the potential harm occasioned by discovery outweighs the ordinary presumption favoring its disclosure," First Niagara Risk Mgmt. v. Folino, 317 F.R.D. 23, 25 (E.D. Pa. 2016).

"[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible."[3]  Pearson v. Miller, 211 F.2d 57, 65 (3d Cir. 2000).  Furthermore, the court may limit discovery where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(c).

## IV.    DISCUSSION

### A.  Party Contentions

Plaintiff argues that documents reflecting other incarcerated individuals' grievances about medical care as well as the BHCS evaluation of and response to those grievances directly relate to Plaintiff's claims against Defendant Benning, the Director of BHCS, Defendant Long, the DOC's former top physician, and Wellpath, the DOC's medical contractor.  Because Plaintiff has alleged Monell and supervisory liability claims whose elements require him to show that a policy or custom of conduct caused his harm, information about similar conduct within the DOC may be relevant, but Plaintiff has not justified requiring Defendant to produce thousands of documents as requested.

---

[3] The undersigned often takes the word "all" with a grain of salt because it is unrealistic in the modern world of litigation, with digital memories and records, to expect any party to honestly be able to comply with a request that starts with the word "all."

Defendant argues that this is an Eighth Amendment deliberate indifference case and not a class action. Therefore, requesting thousands of files related to other inmates would be beyond the reasonable scope of Plaintiff's needs. Defendant argues there is no viable supervisor liability claim as it relates to Defendants Smith and Long under the policy-practice-custom strand of the doctrine because Plaintiff has not identified the specific supervisory practice or procedure. Defendant also argues that to the extent Plaintiff's request is relevant, it is overbroad because of the burden of production and the privacy concerns of other inmates.

During a recent unrecorded telephone conference with the Court, counsel reiterated their positions and stated they had been unable to reach an agreement on the matter without Court intervention. Plaintiff's counsel stated that though Plaintiff had retained an expert witness to testify about Plaintiff's medical history, Plaintiff had not retained an expert who could speak to the need for <u>Monell</u> discovery relating to other-inmate grievances or the likelihood that evidence of policy, custom, or practice would be found in grievance documents.

**B.  <u>Analysis</u>**

In the context of pre-trial discovery, "[r]elevance is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  <u>Green</u>, 314 F.R.D. at 171 (quoting <u>Sanders</u>, 437 U.S. at 351). Defendants argue that the requested grievance evidence is irrelevant because Plaintiff has not identified the specific supervisory practice or procedure that the supervisor failed to employ. Plaintiff alleged that "the DOC and Wellpath have an established custom of failing to designate prisoners' medical conditions as 'chronic' … especially, when they are uncommon and/or not listed in the non-exhaustive list in DOC policy" and "[a]s a result, numerous individuals

incarcerated in the DOC who have chronic medical conditions are forced either to forego sick call visits or pay a co-pay of $5 or more every time they seek medical care." SAC ¶¶ 35-36.

Plaintiff's request for other inmates' medical grievance records, where inmates would likely have complained about failure to monitor and treat chronic conditions, may be relevant because the absence or presence of grievances related to chronic conditions would make it more or less likely that a practice of ignoring chronic conditions existed. See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004) ("Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm."); see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583–84 (3d Cir. 2003) (explaining that the principles of municipal liability set forth in Monell and its progeny also apply to § 1983 claims against private corporations acting under color of state law). Still, the Court notes that, despite having deposed all ten individual defendants, Plaintiff has only cited testimony of one of the ten deponents in his Motion and has not advanced any deponent statement that supports an inference that other inmates have complained about failure to treat chronic conditions. Plaintiff has not provided support for his assertion that other inmates have complained about failure to monitor chronic conditions, other than by stating his own experience. Nevertheless, relevance is a broad standard and information about the manner of responding to similar grievances may contain facts relevant to Plaintiff's claim that ignoring chronic care grievances was a pattern or practice sufficient to satisfy Monell principles.

Because the requested information may be relevant, the dispositive inquiry is whether the probative value of the request is outweighed by the burdens of production. In determining

whether discovery is proportional to the needs of the case, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Courts have granted and denied motions to compel discovery pertaining to non-party actors depending on the breadth of the request and the privacy burden at stake. Compare Klein v. Madison, No. CV 17-4507, 2018 WL 3535301, at *4 n.2 (E.D. Pa. July 20, 2018) (citing examples of the "numerous Monell cases decided by district courts in the Third Circuit that have authorized discovery relating to similar alleged misconduct beyond the alleged misconduct of the individual named defendant[s]") and, Black-Meadows v. Deptford Twp., No. CV 20-6951 (JHR/AMD), 2022 WL 22896230 (D.N.J. Aug. 4, 2022), aff'd, No. CV 20-6951, 2022 WL 16695191 (D.N.J. Nov. 3, 2022) ("Plaintiffs cannot attempt to meet [the Monell] burden of proof without discovery regarding the details of other complaints" arising from similar conduct, evincing a policy or practice under Monell), with Cramer v. Bohinski, No. 1:22-CV-583, 2023 WL 5672177, at *1 (M.D. Pa. Sept. 1, 2023) ("These are precisely the kinds of sweeping, generalized and overly broad discovery requests judges in the Middle District of Pennsylvania have rejected as being not only overly broad, but unduly infringing upon the privacy interests of other inmates who may have sought to grieve unrelated issues that they had with staff") (collecting cases).

Typically, courts that find discovery barred as unduly burdensome cite vague, broad requests *coupled with* a showing of relevance that is minimal or questionable. See e.g., Lofton v. Wetzel, No. 1:12-CV-1133, 2015 WL 5761918, at *4 (M.D. Pa. Sept. 29, 2015) (plaintiffs requests "are vague, overly broad, and burdensome … and the relevance of such information is

questionable at best."); <u>Sloan v. Murray</u>, No. 3:CV-11-0994, 2013 WL 5551162, at *4 (M.D. Pa. Oct. 8, 2013) (denying request for other inmate grievances because the request is overbroad, burdensome and there was an "absence of any argument … as to the relevance of" the request); <u>Montanez v. Tritt</u>, No. 3:14-CV-1362, 2016 WL 3035310, at *4 (M.D. Pa. May 26, 2016) (finding requests for documents referencing staff supervision or incident reports, such as those that "contain, mention, construe, or refer to any inspection, inquiry, or complaint about safety conditions or the risk of inmate-on-inmate violence" undiscoverable as "overly broad, irrelevant, confidential, bear[ing] no sufficient connection to this case, and rais[ing] obvious privacy and security issues.").

Where a request is specific, as opposed to vague or general, a court might still deny it as burdensome if it is lacking relevance and administratively taxing due to its specificity.  <u>See e.g.,</u> <u>Torres v. Clark</u>, No. 1:10-CV-1323, 2011 WL 4898168, at *3 (M.D. Pa. Oct. 13, 2011) (denying request because it was overbroad and burdensome to sort through thousands of grievances to see which ones related to a specific cell in the jail and because records of other inmate grievances bore "little relevance" to "claims that the conditions [Plaintiff] endured while housed there were unconstitutional"); <u>Banks v. Beard</u>, No. 3:CV-10-1480, 2013 WL 3773837, at *5 (M.D. Pa. July 17, 2013) (denying request for four other Muslim inmates' prison account records as irrelevant to plaintiff's claim of First Amendment religious liberty violations against himself, also finding that the request was burdensome and raised privacy concerns).  In sum, courts denying similar motions to compel to the instant motion place the largest emphasis on lack of relevance, going on to note breadth, generality, or administrative burden only after establishing the tenuous showing of relevance.

Here, the request may produce relevant information because Plaintiff correctly contends he needs to show facts beyond his own circumstance to support his theory of <u>Monell</u> liability. <u>Klein</u>, 2018 WL 3535301 at *2.  However, Plaintiff has not advanced any facts or evidence to support his assertion that complaints about failure to treat chronic conditions likely exist within these grievances.  Some courts have found plaintiffs "entitled to conduct full discovery" on <u>Monell</u> claims merely because the burden of discovery requests for <u>Monell</u> evidence "must be measured against the exacting burden of proof a plaintiff faces to establish municipal liability under <u>Monell</u>." <u>Id.</u>  Still, the Court is cognizant of the administrative burden of producing thousands of documents containing sensitive medical information pertaining to non-party individuals and finds Plaintiff has only made a minimal showing that these grievances likely contain complaints about failure to treat chronic conditions.

While, in an attempt to reduce the administrative burden of the request, Plaintiff has made multiple offers to narrow the scope of the request and bear some of the administrative cost, Plaintiff has not clearly justified the Defendants producing the entirety of Request No. 14. Plaintiff agreed to seek only grievances assigned to three of the seven categories Defendants classified: "health care," "medical co-pay," and "problem with staff-medical."  Mot. at 4. Plaintiff offered to narrow the time period of the request to 20 months or even just one year. Mot. at 5.  Plaintiff also offered to perform the cross referencing between the SOIGA and BHCS lists to remove any grievances not relevant to his claims.  <u>Id.</u>  In response to Defendants' privacy concerns, Plaintiff offered to sign a confidentiality agreement.  Reply at 6 n.4.  These measures may reduce the request from implicating more than 5,000 grievance files.  Opp'n at 2.  However, because the Court has found Plaintiff made only a minimal showing as to the likelihood that

failure to treat chronic condition complaints exist within these grievance records, full discovery of these records is unduly burdensome.

Accordingly, the Court neither grants, nor denies Plaintiff's Motion.  In order to balance the burden of the request with the potential relevance it has to Plaintiff's <u>Monell</u> theories, the Court orders the parties to confer to coordinate discovery of a limited, random sample of grievances across a one-year time span.  The parties are to consider a methodology by which Defendants will produce a list of grievances, somewhere in the range of at least 100 files, submitted in a twelve-month period designated by Plaintiff.  Plaintiff may randomly select up to forty (40) files from that list and Defendants will produce an appropriately redacted two-page sample from the selected files.  If probative grievances are contained in the sampling, the Court may consider compelling additional production.  The parties shall file status reports to the Court regarding proposed methodology for conducting this limited sampling of discovery, by November 18, 2025.

## V.    <u>CONCLUSION</u>

An appropriate order has been issued.  <u>See</u> ECF 141.

**BY THE COURT:**

**/s/ Michael M. Baylson**

_____

**MICHAEL M. BAYLSON, U.S.D.J.**

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 22\22-3385 Moses v. Sorber et al\22cv3385 Memorandum of Law re Motion to Compel.docx